USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 5-29-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
LISA PEAY,

                    Plaintiff,

      - v.-

ADMINISTRATION FOR CHILDREN'S
SERVICES, ET AL.

                    Defendants.
------------------------------------

17-cv-4562 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Lisa Peay, a former employee at the New York City Administration for Children's Services ("ACS"), brings this action against the City of New York (the "City")[1]; Almarie Buddington, Commissioner of ACS in the Bronx South Borough, Division of Child Protection; Denise Trotter, the plaintiff's former supervisor at ACS; Mabel Folkes, Supervisor II at ACS; David Reznik, Applications Manager at ACS; Fernando Lorence, Deputy Director at ACS; as well as ten unnamed John Doe individuals and one unnamed corporate entity. The plaintiff

---

[1] The plaintiff filed her claims against the New York Administration for Children's Services, among other defendants. However, "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." See N.Y.C. Charter § 396. The plaintiff's claims against ACS are construed to have been brought against the City.

alleges claims for discrimination based on disability and perceived disability, retaliation, failure to accommodate, and hostile work environment based on disability, age, and gender under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"); the Executive Law of the State of New York, New York State Human Rights Law, § 290, et seq. ("NYSHRL"); the Administrative Code of the City of New York, New York City Human Rights Law, § 8-101, et seq. ("NYCHRL"); and New York Labor Law § 740. The plaintiff filed a Complaint on June 16, 2017, and amended it on November 17, 2017 (the "Amended Complaint"). The Amended Complaint alleges that the defendants discriminated against the plaintiff based on the plaintiff's disability or perceived disability during her employment at ACS. The defendants now move to dismiss the claims in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Amended Complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.

1985). The Court should not dismiss the Amended Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Amended Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Millennium Health, LLC v. EmblemHealth, Inc., 240 F. Supp. 3d 276, 279-80 (S.D.N.Y. 2017).

## II.

Beginning in or around August 2001, the plaintiff worked as a Child Welfare Specialist II and Case Manager in the Child

3

Protective Services department of ACS.[2] Am. Comp. ¶¶ 36, 38. Initially, the plaintiff's duties included investigating allegations of child abuse or neglect, making routine field visits, conducting removals of children, and working on special projects, such as investigating fatalities. Id. ¶ 40.

In or around 2003, the plaintiff was diagnosed with SLE Lupus. Id. ¶¶ 41, 59. In or around 2006, the plaintiff was injured at work and subsequently underwent two surgeries on her left knee and left shoulder. Id. ¶¶ 42, 43. The plaintiff took an extended leave of absence from ACS, returning five years later in 2011. Id. ¶ 44.

When she returned, the plaintiff requested accommodations by ACS due to her injuries. Id. ¶ 45. ACS acquiesced, stationing the plaintiff at the ACS Harlem Field Office on West 125th Street in Manhattan. Id. ¶ 46. In or around May 2014, the plaintiff was moved to the Applications Unit at the same location, where her duties included running clearances of cases, typing reports, investigating fatalities of children in certain cases, handling mail, and ordering supplies. Id. ¶¶ 50, 51.

In or around November 2015, the plaintiff was transferred to the Child Advocacy Center on Park Avenue and 122nd Street in Harlem, where her responsibilities included investigating

---

[2] The defendants contend that the plaintiff's job title was "Child Protective Specialist."

4

allegations of child abuse and running clearances of cases. Id. ¶¶ 53, 54. As an accommodation for her injuries and illness, the plaintiff did not have to work in the field. Id. ¶ 55. On or about November 13, 2015, the plaintiff filed a complaint with the New York State Division of Human Rights (the "NYSDHR"), alleging discrimination and harassment based on her disability. Perelman Decl. Ex. A. After investigating, on or about March 26, 2016, the NYSDHR issued a finding that there was no probable cause to believe that ACS had engaged in unlawful discrimination. Id. Ex. B. The U.S. Equal Employment Opportunity Commission (the "EEOC") adopted the NYSDHR's findings and issued the plaintiff a Right to Sue letter on August 17, 2016.

In or around March 2016, the plaintiff was transferred to ACS's Applications Unit at 2501 Grand Concourse in the Bronx. Am. Compl. ¶ 57. Initially, the plaintiff objected that her Lupus, knee pain, herniated disc in her back, and a disc bulge in her neck prevented her from traveling to that location. Id. ¶¶ 58, 59. However, the plaintiff ended up working from this location until November 2016. The plaintiff's duties at the Grand Concourse location were the same as at the 122nd Street location. Id. ¶ 61.

However, the plaintiff alleges that when she began working at the Grand Concourse location she was initially assigned to a desk in an isolated "bed bug infested" area of the office. Id.

5

¶ 66. The plaintiff complained, both internally at ACS and to her union, and used one week of sick leave. Id. ¶¶ 68, 69, 72. When the plaintiff returned from sick leave, she was assigned to a new location. Id. ¶ 74. However, the plaintiff began having issues with her supervisor, Denise Trotter. Trotter would speak in a "disrespectful and derogatory manner" to the plaintiff and refuse to assist the plaintiff when requested. Id. ¶ 77. Trotter would read aloud the notes from the plaintiff's doctor so that colleagues would overhear the plaintiff's confidential medical information. Id. ¶ 75. Trotter would also assign the plaintiff work right before the plaintiff's scheduled lunch break, preventing the plaintiff from taking her Lupus medication, which must be taken with food. Id. ¶¶ 78, 79. The plaintiff complained to Trotter and David Reznik, the Applications Manager, but neither endeavored to help the plaintiff. Id. ¶¶ 81, 82. From April 2016 to July 2016, the plaintiff sent multiple emails within ACS complaining about Trotter. Id. ¶ 88.

On October 27, 2016, a meeting was convened to address the situation. Id. ¶ 86. The meeting was attended by Commissioner Buddington, three representatives of the plaintiff's union, Mabel Folkes, Reznik, Trotter, and the plaintiff. Id. ¶ 86. Four days later, on October 31, 2016, the plaintiff alleges that unnamed defendants assigned her new cases while she was undergoing an assessment, evaluation, and training with Reznik

6

"even though [the defendants] are not supposed to assign any cases while employees are in conference with the manager." Id. ¶ 89. The plaintiff also alleges that she was assigned more cases overall than any other employee. Id. ¶ 89. As a result of being assigned cases during her conference with Reznik, the plaintiff experienced chest pains and felt overwhelmed. Id. ¶ 92. The plaintiff informed Reznik that day that she would have to visit an emergency room after work because of the incident, although it is unclear whether the plaintiff ultimately did. Id. ¶ 93.

During October 2016, the plaintiff began experiencing heart palpitations, headaches, chest pains, and swollen fingers. Id. ¶ 94. She complained to the defendants but alleges that she was "ordered . . . to continue working." Id. ¶ 94. Also on October 31, 2016, the plaintiff submitted a request for a leave of absence from November 1, 2016 to December 31, 2016, due to her deteriorating health. Id. ¶ 96. The defendants granted the plaintiff's request. See id. ¶ 100. The plaintiff also requested three and a half weeks of discretionary paid leave that would not count against her sick or vacation time, but this request was denied. Id. ¶ 99.

On November 3, 2016, while out on leave, the plaintiff filed a Charge of Discrimination with the EEOC, complaining of discrimination based on disability based on the issues at the

7

Grand Concourse location. Id. ¶¶ 104, 105. That same day, the plaintiff also filed a grievance with her union relating to harassment at work. Id. ¶ 102.

In January 2017, the plaintiff was diagnosed with breast cancer, for which she was scheduled to undergo chemotherapy and surgery, which treatment could last up to eight months. Id. ¶¶ 107, 108. The plaintiff requested and was granted an extension of her sick leave, and was told she must return to work on or before November 1, 2017 or her employment would be terminated. Id. ¶ 113. The plaintiff did not return to work by that date, and her employment with ACS has been terminated.

### III.

#### A.

The defendants move to dismiss the plaintiff's claim under New York Labor Law § 740. The defendants argue that § 740 does not apply to public employees, such as the plaintiff. That is plainly correct. See, e.g., Ryan v. New York City Dep't of Educ., No. 11-cv-1628, 2011 WL 4899923, at *3 (E.D.N.Y. Oct. 13, 2011) ("section 740 does not apply to public employers; rather, public employers are covered by New York Civil Service Law § 75-b"). The plaintiff responds that the Court should allow her to substitute a claim under New York Civil Service Law § 75-b for her current claim under § 740. Setting aside the impropriety of moving to effect an immediate amendment of her pleadings in

8

her opposition papers to the defendants' motion to dismiss, the substitution the plaintiff seeks would be futile. Section 75-b does not apply to employees who are covered by a collective bargaining agreement with a specified grievance procedure. See Morales v. City of New York, No. 14-cv-7253, 2017 WL 4277174, at *4 (S.D.N.Y. Sept. 25, 2017). Because the plaintiff makes clear that she in fact initiated such a grievance procedure in this case, she cannot state a claim under § 75-b. See Am. Compl. ¶ 102.

Therefore, the defendants' motion to dismiss the plaintiff's claim under New York Labor Law § 740 is **granted**, and the plaintiff's request to substitute a claim under New York Civil Service Law § 75-b is **denied**.

### B.

### (i).

The defendants move to dismiss the plaintiff's claims under the NYSHRL and NYCHRL that were raised in her November 13, 2015 complaint to the NYSDHR as barred by the election of remedies. The plaintiff concedes that she is pursuing this action based only on her November 3, 2016 complaint to the EEOC but disputes

whether the election of remedies would bar any claims based on her first complaint to the NYSDHR.

The NYSHRL provides that:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . .

N.Y. Exec. Law § 297(9).[3] Moreover, "once a plaintiff brings a case before the NYSDHR, he or she may appeal only to the Supreme Court of State of New York." York v. Ass'n of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002) (citing N.Y. Exec. Law § 298). Thus, the plaintiff's November 13, 2015 complaint to the NYSDHR bars her from relitigating in this case the claims she raised there.[4]

### (ii).

Claims under the ADA that are initially pursued through a state or local agency must be brought within three hundred days

---

[3] As the Second Circuit Court of Appeals has explained, "the language of the [NYCHRL] is nearly identical to that of [the NYSHRL], and discussion of the latter applies equally to the former." York v. Ass'n of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002) (internal quotation marks omitted).

[4] The defendants also point out that the plaintiff failed to file suit within ninety days after she received the August 17, 2016 Right to Sue letter based on her November 13, 2015 complaint. Thus, any claims based on the allegations in that complaint are independently time barred. Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 37 (2d Cir. 2011)

10

of the alleged unlawful practice. 42 U.S.C. §§ 2000e-5(e), 12117(a). Because the plaintiff filed her most recent complaint with the EEOC on November 3, 2016, this limitation would bar any claims for events prior to January 8, 2016. However, the plaintiff contends that claims outside this window are not time-barred under the "continuing violation" doctrine.

The continuing violation doctrine "provides an exception to the normal knew-or-should-have-known accrual date . . . [for] claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015) (citations and internal quotation marks omitted). In the context of alleged discrimination and relation, the continuing violation doctrine applies to continuous adverse acts by the defendants, "not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation,'" Id. (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 111 (2002) (brackets omitted)).

The plaintiff contends that the defendants "engaged in discriminatory actions for an extended period of time," but the plaintiff does not explain why any of these actions should be considered a single continuous violation. Pl.'s Mem. Law Opp'n Defs.' Mot. Dismiss 7. The Amended Complaint contains allegations of discrimination and retaliation occurring almost exclusively after March 2016, see Am. Compl. 8, and it is

11

therefore unclear which pre-January 8, 2016 actions the plaintiff seeks to include under this theory. In fact, it was not until March 2016 that the plaintiff was transferred to the Grand Concourse location, where she encountered Trotter and Reznik, whose personal involvement is most closely linked to the acts of discrimination specifically alleged in the Amended Complaint.

Similarly, the plaintiff's failure to accommodate claims all allege separate events. For example, the plaintiff alleges that she was required to conduct field work until May 2014 before she was "taken off the field" and stationed in the Harlem Field Office on West 125th Street. Am. Compl. ¶¶ 47, 50. After her transfer to the Child Advocacy Center at Park Avenue and 122nd Street in November 2015, the plaintiff "was on restricted reasonable accommodation where she did not have to go in the field." Id. ¶ 55. The pre-May 2014 field work was addressed and is unrelated to the subsequent actions alleged in the Amended Complaint, none of which allege that the plaintiff was forced to do field work. Thus, the plaintiff has failed to show how any of her allegations are subject to the continuing violation doctrine, and the plaintiff's discrimination, retaliation, and failure to accommodate claims related to events prior to January 8, 2016 are time-barred.

Therefore, the plaintiff's discrimination, retaliation, and failure to accommodate claims based on events prior to January 8, 2016 are **dismissed** as time-barred. However, to the extent that the plaintiff can show that her hostile work environment claims, for which there is a timely basis, are based on a continuous course of conduct or policy by the defendants, the plaintiff may point to evidence of pre-January 8, 2016 events.[5]

### C.

The defendants argue that all of the plaintiff's claims for discrimination, failure to accommodate, hostile work environment, and retaliation must be dismissed because the plaintiff has not pleaded a plausible claim for any such violations.

While a plaintiff need not plead a prima facie case of employment discrimination under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff must at least set forth a plausible claim for relief for violations of the statutory provisions that prohibit discrimination based on disability, failure to accommodate, and retaliation. See, generally, Littlejohn v. City of New York, 795

---

[5] It is unclear how, if at all, the plaintiff could establish such a continuing hostile work environment given that she worked from at least three separate locations between returning to ACS in 2011 and leaving on an extended leave of absence in November 2016.

13

F.3d 297, 307-311 (2d Cir. 2015); Jones v. Target Corp., No. 15-cv-4672, 2016 WL 50779, at *5 (E.D.N.Y. Jan. 4, 2016) (applying the same standard to claims under the ADA); Williams v. New York City Hous. Auth., 458 F.3d 67, 72 (2d Cir. 2006) (same for retaliation claim); see also Rullan v. New York City Sanitation Dep't, No. 13-cv-5154, 2014 WL 2011771, at *7 (S.D.N.Y. May 16, 2014), aff'd, 607 F. App'x 86 (2d Cir. 2015) (setting out the standard to plead a claim for failure to accommodate).

The Second Circuit Court of Appeals has "not yet decided whether a hostile work environment claim is cognizable under the ADA." Flieger v. E. Suffolk BOCES, 693 F. App'x 14, 19 (2d Cir. 2017). As in that case, the Court assumes for the purposes of this motion that it is. To state such a claim:

> the plaintiff must show that the discriminatory harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that a specific basis exists for imputing the objectionable conduct to the employer.

Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015) (internal quotation marks omitted).

With respect to the discrimination based on disability claims, the defendants argue that the plaintiff has not pleaded adequately that she suffered any adverse employment actions because of her disability. The plaintiff alleges that the defendants read aloud her confidential medical information,

14

which directly related to her disability, and that they interfered with her scheduled meal break despite the plaintiff's complaints that she needed to take her Lupus medication with food. Plainly there are issues of fact whether such allegations are sufficiently severe and sufficiently linked to the plaintiff's physical conditions that cannot be decided at the pleadings stage.

With respect to the plaintiff's claims for failure to accommodate, the defendants argue that the Amended Complaint shows that the plaintiff's disabilities were, in fact, accommodated. But, similar to the plaintiff's discrimination claim, there is an issue of fact whether preventing her from taking a meal break so that she could take her Lupus medication constituted a failure to accommodate her disability.

With respect to the plaintiff's retaliation claims, the defendants construe the Amended Complaint to raise an allegation of retaliation based only on the plaintiff's complaints to the NYSDHR and the EEOC, see Defs.' Mot. Dismiss 19, and allege that the plaintiff has not shown a causal connection between those complaints and the adverse actions she alleges.[6] Yet the

---

[6] The defendants also argue that none of the allegations in the Amended Complaint rise to the level of an adverse employment action. This argument fails with respect to the retaliation claims for the same reasons it fails with respect to the plaintiff's discrimination claims.

plaintiff alleges numerous other instances of internal written complaints throughout 2016. See, e.g., Am. Compl. ¶ 88. Whether the alleged adverse actions against the plaintiff were causally connected to any of her complaints cannot be decided on a motion to dismiss.

Finally, the defendants move to dismiss the plaintiff's claim for hostile work environment, arguing that the plaintiff's allegations are not sufficiently severe or pervasive. The same fact issues discussed with respect to the plaintiff's other claims apply to her claim for hostile work environment. However, the plaintiff's claim for hostile work environment is **dismissed** in so far as it is based on gender and age because the plaintiff did not plead any facts attempting to connect her allegedly hostile work environment to either of those characteristics.

Therefore, the defendants' motion to dismiss the plaintiff's claims for discrimination, failure to accommodate, retaliation, and hostile work environment based on the pleadings is **denied**, except with respect to the plaintiff's hostile work environment claim based on gender and age, which is **dismissed**. The remaining claims require further development in the course of discovery and any subsequent dispositive motions.

## CONCLUSION

The Court has considered all the parties' arguments. To the extent any arguments are not specifically addressed above, they are either moot or without merit. The defendants' motion to dismiss the Amended Complaint is **granted in part and denied in part**. The Clerk of Court is directed to close all pending motions.

SO ORDERED.

Dated: New York, New York
May 29 2018

John G. Koeltl
United States District Judge